| | |
|---|---|
| STATE OF SOUTH CAROLINA ) | IN THE COURT OF COMMON PLEAS |
| COUNTY OF RICHLAND ) | |
| ) | CASE NO. _____ |
| HIREGURU, LLC ) | |
| ) | |
| v. ) | **VERIFIED COMPLAINT FOR** |
| ) | **PRELIMINARY AND PERMANENT** |
| JULIUS WALKER MCKAY, JR., ) | **INJUNCTION, FRAUD, CIVIL** |
| ) | **CONSPIRACY, BREACH OF** |
| ) | **CONTRACT AND DAMAGES** |
| MCKAY CONSULTING GROUP, LLC, ) | |
| and ) | |
| SEAN RANKIN, ) | |
| Defendants. ) | |

NOW COMES HIREGURU, LLC, a Georgia limited liability company, and for this its complaint against the above-named Defendants shows as follows:

1. Defendant Julius Walker McKay, Jr. ("McKay") is a resident of Richland County, South Carolina and may be served at 1707 Bannockburn Drive, Columbia, SC 29206.

2. Defendant McKay Consulting Group, LLC ("McKay Consulting") is a South Carolina Limited Liability Company with its principal office in Richland County and may be served through its registered agent McKay at 1707 Bannockburn Drive, Columbia, SC 29206.

3. Defendant Sean Rankin ("Rankin") is a resident of Richland County and may be served at 1403 Confederate Avenue, Columbia, SC 29201.

4. Venue is proper in this Court.

EXHIBIT 1

5. Plaintiff owns and operates a website found at www.hireguru.com and www.innervue.net (the "Websites") that allows its customers to interview candidates for employment positions through the software contained on the website.

6. The Websites allow a company to screen candidates for employment positions by having the candidates register for the Websites and afterwards, among other things, upload their resumes, a short video, and answer interview questions.

7. In December 2015, McKay falsely expressed interest in obtaining a license to use the Websites from Plaintiff and/or to use the Websites himself.

8. On or about February 9, 2016, McKay registered to use the Websites.

9. Upon registration, all users, including McKay, agree to certain Terms and Conditions. A true and correct copy of the Terms and Conditions is attached hereto as Exhibit "A" and is incorporated herein.

9. The Terms and Conditions prevent registered users from, among other things, creating similar and competing software and websites.

10. Sometime after this engagement and McKay's registration, McKay conspired with Rankin to create a competitive website(s) and/or software.

11. On or about March 15, 2016 Rankin registered to use the Websites under the guise that he was applying for a sales representative position with one of Plaintiff's clients.

12. By registering for the Websites, Rankin also agreed to the aforementioned Terms and Conditions.

13. Rankin, upon insistence from McKay, registered for the Websites with no intention of ever complying with the Terms and Conditions and only for the purpose for stealing Plaintiff's software and idea.

2

14. When Rankin registered for the Websites, he never was a bona fide candidate for the employment position and only did so to steal Plaintiff's intellectual property.

15. On or about March 24, 2016, McKay informed Plaintiff through a phone conversation that he was considering developing a competing website.

16. Plaintiff gave notice to McKay via certified letter that such activity was prohibited by the Terms and Conditions. Attached hereto as Exhibit "B" is a copy of said letter.

17. Plaintiff gave notice to Rankin that his attempts to create a competing software were prohibited by the Terms and Conditions. Attached hereto as Exhibit "C" is a copy of said letter.

18. Despite receipt of such notice, McKay and Rankin continue to develop (or have developed) a competing website in knowing and intentional violation of the Terms and Conditions.

19. On or about April 11, 2016, McKay and McKay Consulting made it known that Defendants were in the process of creating such a website through a post on LinkedIn. Attached hereto as Exhibit "D" is a true and correct copy of said post and is incorporated herein.

20. McKay and/or McKay Consulting has hired or otherwise partnered with Rankin to develop a website based upon Plaintiff's Websites in direct violation of the Terms and Conditions.

### (Injunction)

21. Plaintiff realleages the above paragraphs as if repeated verbatim herein.

22. Plaintiff will be irreparably injured by Defendants' violation of their obligations under the Terms and Conditions, for which Plaintiff has no adequate remedy at law.

23. Plaintiff will be irreparably injured in the absence of injunctive relief prohibiting Defendants from violating the Terms and Conditions.

24.  Plaintiff is likely to succeed on the merits of this action.

25.  Plaintiff is entitled to a preliminary injunction and permanent injunction prohibiting Defendants from creating a website and/or software, in direct violation of the Terms and Conditions, based on Plaintiff's proprietary Websites and software.

### (Civil Conspiracy)

26.  Plaintiff realleages the above paragraphs as if repeated verbatim herein.

27.  McKay and Rankin conspired, for their own benefit, to create a competing website and/or software with Plaintiff's Websites and software.

28.  Said competing website and/or software is solely based on Plaintiff's Websites and the idea behind said Websites.

29.  McKay and Rankin conspired to create the competing website and/or software with the intent to harm Plaintiff and knowingly violated the Terms and Conditions.

30.  Said competing website and/or software has and will cause special damages to Plaintiff by the way of lost business and revenue.

### (Fraud)

31.  Plaintiff realleages the above paragraphs as if repeated verbatim herein.

32.  McKay and Rankin represented to Plaintiff that they would abide by the Terms and Conditions of the Websites when they registered for said Websites.

33.  The representation that McKay and Rankin would abide by the Terms and Conditions was false and McKay and Rankin knew such representation was false.

34.  Having users, including McKay and Rankin, register for the Websites is material to Plaintiff allowing users access of its Websites and software.

4

35. Plaintiff had no reason to believe McKay and Rankin agreed to the Terms and Conditions with no intention of abiding by the same.

36. Plaintiff relied on McKay and Rankin's representation to abide by the Terms and Conditions and allowed both to register and use the Websites and software.

37. By registering and using the Websites and software, Defendants gained knowledge of Plaintiff's intellectual property and are using said knowledge to develop (or have developed) a competing software and websites which is similar if not identical to Plaintiff's.

38. The development of this competing similar, if not identical, website and/or software has and will cause injury to Plaintiff through loss of business and revenue.

### (Breach of Terms and Conditions)

39. Plaintiff realleages the above paragraphs as if repeated verbatim herein.

40. Registered users of the Websites, which include McKay and Rankin, are subject to the Terms and Conditions published on the website, including the following:

> You acknowledge You will not, directly or indirectly: reverse engineer, translate, adapt, disassemble, copy, distribute, reproduce, modify, create a derivative work of... any part of the Website, Service or Content or any parts thereof. You acknowledge, and further agree, that You have no intellectual property right ("IP right") related to any process, idea, Service, Content, Website, or any combination of the foregoing or party thereof except the limited license.

41. By registering for the Websites, McKay and Rankin agreed to the Terms and Conditions.

42. By developing and using competing websites and/or software based on Plaintiff's Websites, McKay and Rankin breached the terms and conditions.

43. McKay and Rankin are thereby liable to Plaintiff for breach of contract.

WHEREFORE, Plaintiff prays as follows:

(1) that a temporary restraining order and a preliminary and permanent injunction issue against all Defendants, restraining and enjoining Defendants from violating the Terms and Conditions by developing a competing website and/or software to Plaintiff's Websites;

(2) that Plaintiff have judgment against Defendants jointly and severally as the evidence may show as actual damages including but not limited to attorneys' fees and expenses of litigation, and punitive damages;

(3) that Plaintiff have such other and further relief as may be just in the premises; and

(4) that all costs of court be cast upon Defendants.

Nathan E. Huff
South Carolina Bar No. 100130
nhuff@nehlaw.com
Attorney for Plaintiff

Law Office of Nathan E. Huff
228 Baston Road
Augusta, GA 30907
(706) 922-3104

6

YOU MUST READ, UNDERSTAND AND ACCEPT THE PROVISIONS OF THIS AGREEMENT BEFORE CLICKING "I ACCEPT". IF YOU DO NOT, YOU MUST NOT CLICK "I ACCEPT".

This agreement is entered into by and between HIREGURU, LLC and any subsidiary or component of HIREGURU, LLC such as INNERVUE (Collectively referred to as "HIREGURU") and You (as defined below) by clicking "I ACCEPT" below, and the following provisions are agreed upon:

A.     **DEFINITIONS:**

1. Account - Any account provided by HIREGURU including but not limited to access the website, to which this agreement and/or other agreements between You and HIREGURU may apply.
2. Account ID - An Account designation that HIREGURU can use to identify an Account also known as Account Username.
3. Content - Any material related to the Content, Items and Processes of the website.
4. Website - any website run by or owned by HIREGURU.
5. IP right - Any intellectual property right, including but not limited to any copyright, trademark, patent, trade secret, industrial design right, database right, software, idea, concept, method, invention, Content, Item, or combinations thereof.
6. Service - Any online service provided by HIREGURU for use with the website.
7. Software - Any software provided by HIREGURU related to the website, along with any subsequent versions, enhancements, modifications, or upgrades.
8. You / Your - A person who may click "I ACCEPT" below including any company which the person may bind or represent.

B.     **LIMITED LICENSE – SERVICE AND CONTENT LICENSED NOT SOLD**

1.     You acknowledge that You must obtain Service from HIREGURU to complete an application and You acknowledge that You are responsible for supplying any necessary communications connections and hardware to use the Website, as well as any costs or expenses related to the foregoing. You further acknowledge that HIREGURU may, in its sole and absolute discretion, allow You full or partial access to the Website and may condition such full or partial access upon Your compliance with the terms of this Agreement. You also acknowledge that HIREGURU may, in its sole and absolute discretion, without notice, terminate your ability to access certain features of the Website.

2.     You acknowledge that any HIREGURU license to use Service, Content or Website is pre-conditioned upon Your agreement to comply with all provisions of this agreement. Accordingly, You also acknowledge that any HIREGURU license to use such Service, Content or Website would not exist without Your agreement to comply with all provisions of this agreement.

3.     Any Service, Content or Website supplied by HIREGURU is licensed, not sold, by HIREGURU. All title and rights not expressly granted in this agreement, including but not limited to any IP right and the display thereof, are retained by HIREGURU. HIREGURU hereby grants You a revocable, non-exclusive, license for use of Service, Content and Website that is non-transferable. YOU ACKNOWLEDGE THAT ANY SUCH LICENSE TERMINATES IMMEDIATELY IF YOU BREACH, VIOLATE, OR OTHERWISE FAIL TO COMPLY WITH EACH AND EVERY PROVISION OF THIS AGREEMENT AND HEREBY WAIVE ANY RIGHTS YOU MAY HAVE HAD TO NOTICE OF TERMINATION. IN THE EVENT OF TERMINATION OF ANY SUCH LICENSE HIREGURU MAY, IN ITS SOLE AND ABSOLUTE DISCRETION, MODIFY OR DELETE YOUR ACCOUNT AND ALL RELATED CONTENT.

4.     You acknowledge that any HIREGURU license to any Account ID is pre-conditioned upon Your agreement to comply with all provisions of this agreement. Accordingly, You also acknowledge that any HIREGURU license to use such Account ID would not exist without Your agreement to comply with all


"A"

provisions of this agreement. You further acknowledge that you must register to access the Website and Service. You are responsible for keeping your password secure. You will be solely responsible and liable for any activity that occurs under your user name.

5.          You acknowledge You will not, directly or indirectly: reverse engineer, translate, adapt, disassemble, copy, distribute, reproduce, modify, create a derivative work of, sell, sub-license, rent, lease, loan, transfer, decompile, or reduce to any human-perceivable form, any part of the Website, Service or Content or any parts thereof.

6.          You acknowledge, and further agree, that You have no intellectual property right ("IP right") related to any process, idea, Service, Content, Website, or any combination of the foregoing or parts thereof except the limited license.

## C.    DURATION OF AGREEMENT AND ACCOUNT TERMINATION

1.          Duration - Unless modified or amended by HIREGURU, this agreement and its provisions shall remain in effect. Termination of any license granted by HIREGURU under this agreement does not affect any other provisions of this agreement.

2          Discretionary Account Termination - You may notify HIREGURU that You wish to terminate an Account by notifying HIREGURU as proscribed herein. Any such request include Your name, address, contact information, and a reason for the request. HIREGURU may also, in its sole and absolute discretion, provide other means by which You may choose to so notify HIREGURU. Whether or not You wish to terminate an Account, HIREGURU may at any time or for any reason, both of which shall be conclusively determined in the sole and absolute discretion of HIREGURU, modify or delete Your Account. Termination of an Account under this provision also terminates any license granted by HIREGURU under this agreement but does not affect any other provisions of this agreement.

3.          ANY TERMINATION OF THE ACCOUNT, WHETHER PURSUANT TO THIS SECTION OR OTHER SECTIONS OF THIS AGREEMENT SHALL BE WITHOUT REFUND OR NOTICE.

4.          You understand that in the event of termination for any reason You will lose all data related to your Account.

## D.    COMMUNICATIONS

1.          You acknowledge and agree that HIREGURU may occasionally send you communications regarding your account or the Service or Website via email.

## E.    ACCEPTABLE USE AND CONDUCT

1.          You are solely responsible for your conduct and your data related to the Service and Website. You agree to indemnify, defend, and hold harmless HIREGURU and its suppliers from any and all loss, claims, cost, liability, and expense arising from or related to your data, your use of the Service, or your violation of these terms. The Service and Website are made available to You or your company only for personal or commercial use, which use must be in compliance with all applicable laws, rules and regulations and must not infringe or violate third party rights. Any unauthorized use of any HIREGURU Service is a violation of these Terms of Service and certain federal and state laws. Such violations may subject you and your agents to civil and criminal penalties.

## F.    FEES

1.          HIREGURU reserves the right to impose or change fees for use of the Service or Website at any time. If you do not agree to such fees you should cease using the Services and inform HIREGURU of your intent to terminate your account. HIREGURU will not issue refunds for unused Service at any time. You agree that You or your company may enter into a contract with HIREGURU that requires recurring billing. At the end of the contract term, the contract will automatically renew indefinitely until explicitly cancelled by the user. The user must notify HIREGURU three (3) days prior to the end of the contract term to allow for adequate processing time.

2.          HIREGURU WILL NOT, UNDER ANY CIRCUMSTANCES, ISSUE REFUNDS FOR EARLY CONTRACT CANCELLATION. Any past due fees and costs may, in the sole discretion of HIREGURU, be sent to collections. If our collection efforts fail, unpaid debts will be reported to all available credit reporting agencies.

### G.     NO WARRANTIES OR REPRESENTATIONS

**1.          YOU UNDERSTAND AND AGREE THAT THE SERVICE AND WESBITE ARE PROVIDED "AS IS". HIREGURU EXPRESSLY DISCLAIMS ALL WARRANTIES OF ANY KIND EXPRESS OR IMPLIED, INCLUDING WITHOUT LIMITATION ANY WARRANTY OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, ACCURACY, TIMELINESS, NON-INFRINGEMENT OR BAILMENT OF YOUR DATE ON HIREGURU'S SERVERS. HIREGURU MAKES NO WARRANTY OR REPRESENTATION REGARDING THE RESULTS THAT MAY BE OBTAINED FROM THE USE OF THE SERVICE OR WEBSITE, OR THE SECURITY OF THE SERVICE OR WEBSITE.**

### H.     LIMITATION OF LIABILITY

1.          To the fullest extent permissible by law, and except for its gross negligence or intentional misconduct, HIREGURU's liability shall be limited to the return of fees paid for the interview or candidate at issue. In no event shall HIREGURU be liable for any indirect, special, incidental, consequential or punitive damages (including but not limited to loss of use, loss of profits, or loss of data) whether in an action in contract, tort (including but not limited to negligence), equity or otherwise, arising out of or in any way connected with the use of or inability to use this site or the materials therein or resulting from unauthorized access to or alteration of data.

### I.     MODIFICATION

1.          HIREGURU may modify or terminate our Service at any time, for any reason, and without notice. HIREGURU reserves the right to modify these Terms of Service at any time without notice. Please review these Terms of Service on occasion as they may change in the future. HIREGURU may, but has no obligation to, remove accounts and content containing what we determine as unlawful, offensive, threatening, defamatory, obscene or otherwise objectionable material. HIREGURU will remove content that violates any party's intellectual property or these Terms of Service. An account terminated by HIREGURU will not be backed-up for any reason and will be immediately deleted from our servers.

### J.     NOTIFICATION

1.          Users with Questions about these Terms of Service or Privacy Policy or if any Notice required hereunder should be given, You may contact HIREGURU at info@innervue.net.

### K.     PRIVACY AND DATA PROTECTION

1.          It is Your responsibility to read, understand and accept the Privacy Policy in effect each and every time You use the Service. You acknowledge that HIREGURU may make changes to the Privacy Policy at any time. You also acknowledge that each and every time You click "I ACCEPT" You warrant and

represent that You did read, understand and accept the most recent version of the Privacy Policy in effect at that time.

2.  HIREGURU will not share, sell or rent Your name, address, phone number, e-mail, biographical information and evaluation results or other information to any third-party without your consent. We will share the aforementioned information with any and all companies, customers or other third parties for which you direct HIREGURU to share such information (given that Your Account has not been terminated) or with companies, customers or other third parties for which you apply for positions. Other authorized users or employees or designees of HIREGURU will also have access to this information. HIREGURU shall not be responsible for any damages that result from any authorized or unauthorized transmittal of the data and information as described in this section.

3.  HIREGURU at its sole discretion may review any information, feedback or communication related to the Service or Website. HIREGURU has no obligation under any circumstances to review any information, feedback or communication. HIREGURU may, in its sole and absolute discretion, choose to review any information, feedback or communication. HIREGURU may take any action, or no action whatsoever, based on any information, feedback or communication, including but not limited to publicly commenting upon or publishing the foregoing. HIREGURU has no obligation to explain any decision to take any action, or no action whatsoever, based on any information, feedback or communication. You acknowledge, and further agree, that You have no obligation to provide HIREGURU any information, feedback or communications. You further agree to defend, indemnify and hold harmless HIREGURU with respect to any claim related to any information, feedback or communications You provide. HIREGURU will retain, but is under no obligation to do so, the information described in this section as long as it deems applicable.

4.  By accepting this Agreement, You covenant not to hack or otherwise manipulate the Services and Website in a way it was not intended to be used. You agree that HIREGURU, at its sole discretion, may, in the event you violate the section of this Agreement, seek recourse against you by way of any proceeding HIREGURU deems appropriate, and / or terminate Your account immediately. You also covenant not to obtain any other user's information unless permission is expressly given.

**L.      DISPUTE RESOLUTION –MANDATORY BINDING ARBITRATION**

1.  In order to reduce instances of possible dispute and to make the resolution of any disputes which do arise less expensive, quicker, less subject to public notoriety and to resolve disputes in a less formal and antagonistic means than litigation, You agree that any dispute, claim suit, action, controversy, litigation ("Dispute") You have against HIREGURU, will first be subject to informal resolution lasting sixty (60) days. You agree to try to resolve any Dispute informally before initiating any arbitration or other proceeding. You agree to notify HIREGURU that you wish to resolve a Dispute. Any such request must include Your name, address, contact information, Account ID and an explanation of the Dispute. HIREGURU may thereafter take any action as conclusively determined by HIREGURU or may take no action whatsoever. HIREGURU has no obligation to explain any decision.

9.  (b) Mandatory Binding Arbitration - If You are not able to satisfactorily resolve a Dispute informally within a total of sixty (60) days or if HIREGURU, in its sole and absolute discretion, determines that it will not be possible to satisfactorily resolve that Dispute informally within a total of sixty (60) days, You agree that either You or HIREGURU may request resolution by final and fully binding arbitration conducted under the Commercial Arbitration Rules of the American Arbitration Association. You acknowledge that final and fully binding arbitration shall be your only final recourse related to a decision by HIREGURU to terminate Your Account. The arbitration shall be conducted by a single arbitrator who shall be an impartial attorney. The arbitrator shall complete all proceedings instituted hereunder within six (6) months of initial presentment. The arbitration may be conducted in person, in Augusta, Georgia,

through the submission of documents, by phone or online as allowed by the arbitrator and the rules of the American Arbitration Association. The arbitrator's written opinion (if any) shall be limited to 3,000 words or less. The arbitrator shall have the authority to award the costs of arbitration, including attorney's fees, to the prevailing party. Except as otherwise provided in this agreement, You and HIREGURU may seek to - compel arbitration, stay other proceedings pending arbitration, or to confirm, modify, vacate or enter judgment on an award entered by the arbitrator - by recourse to any other proceeding, including any legal proceeding in court or before an administrative agency. YOU UNDERSTAND, AND FURTHER AGREE, THAT YOU HAVE THE RIGHT TO CONSULT WITH INDEPENDENT LEGAL COUNSEL OF YOUR OWN CHOOSING REGARDING THIS AND ANY OTHER PROVISION IN THIS AGREEMENT, AND THAT IF YOU CLICK "I AGREE," THEN THIS BINDING ARBITRATION PROVISION WILL ELIMINATE YOUR LEGAL RIGHT TO SUE IN COURT AND/OR HAVE A JURY TRIAL WITH RESPECT TO ANY SUCH DISPUTE. You and HIREGURU further acknowledge and agree that this section may only be used with respect to a Dispute between You and HIREGURU. Accordingly, You and HIREGURU agree that neither shall attempt to have any other Dispute related to any other party, including but not limited to any class action, joined to any arbitration in which You are involved. Thus, to the fullest extent permitted by law no arbitration proceeding shall be joined with any other or decided on a class-action basis.

# THE LAW OFFICE OF NATHAN E. HUFF

LICENSED IN GEORGIA AND SOUTH CAROLINA
228 BASTON ROAD
AUGUSTA, GEORGIA 30907
(706) 922-3104
FACSIMILE (706) 922-3105
WWW.NEHLAW.COM

April 6, 2016

Mr. Walker McKay
1707 Bannockburn Drive
Columbia, SC 29206

Re:   Innervue / Hireguru – Terms and Conditions

Dear Walker:

I represent Hireguru, LLC. It has come to my client's attention that you intend to violate the terms and conditions you agreed to when you registered with Innervue. I have enclosed a copy for your reference. Specifically, the terms and conditions prohibit registered users from modifying the software or reverse engineering the software. Registered users also agreed that my client owns the intellectual property behind the software, website, and idea. Any steps taken to create a similar website will be in direct violation of the agreement. Hireguru, LLC hereby demands that you cease and desist from any such activity or any other activity in violation of the agreement. Otherwise, Hireguru, LLC will immediately seek injunctive relief to enforce the agreement and for all costs and attorney fees incurred in enforcement of the agreement.

Please be governed accordingly.

Sincerely,

Nathan E. Huff

Enclosure

cc:   Hireguru, LLC



# THE LAW OFFICE OF NATHAN E. HUFF

LICENSED IN GEORGIA AND SOUTH CAROLINA
228 BASTON ROAD
AUGUSTA, GEORGIA 30907
(706) 922-3104
FACSIMILE (706) 922-3105
WWW.NEHLAW.COM

April 12, 2016

Mr. Sean Rankin
1403 Confederate Ave
Columbia, SC 29201

      Re:    Innervue / Hireguru–Terms and Conditions
                Development of Website

Dear Mr. Rankin:

I represent Hireguru, LLC. It has come to my client's attention that you are assisting Walker McKay create a website or software in violation of the Terms and Conditions Mr. McKay agreed to when he registered to use my client's website. A copy of the complaint is enclosed. If I do not receive written confirmation within 3 days of the receipt of this letter, from both you and Mr. McKay, that no further steps will be taken to violate the Terms and Conditions and that a competing website will not be operational, I will file the lawsuit and seek an injunction and damages against you individually as well as Mr. Walker and his company.

Please be governed accordingly.

                                      Sincerely,

                                      Nathan E. Huff

Enclosure

cc:    Mr. Walker McKay via regular mail
        Hireguru, LLC via email



in

Search for people, jobs, companies, and more...

## Walker McKay

Managing Partner at McKay Consulting Group, LLC.

2,721 followers Following

Posts (1) Recent Activity (2)

**Walker McKay**

Managing Partner at McKay Consulting Group, LLC.

I am looking for Hiring Managers, VP of Sales, HR managers, and CEO's to be beta testers for a aoftware that Sean Rankin and I are working on. The focus is on hiring salespeople more efficiently and effectively. Are you someone who feels like they are spending an inordinate amount of time screening sales or business development job candidates? I would like to talk to you. Call ma or send an email 803.917.2817 show less

Like · Comment · Share · 3

**Walker McKay** 4d

Managing Partner at McKay Consulting Group, LLC.

Great article from my friend Dan D'Alberto about trusting your gut

### Acting Without Thinking

**Dan D'Alberto on LinkedIn** · "Go with your gut." "Trust your instinct." "Follow your intuition." A lot of advice out there tells you not to take advice. This advice--to not se

About Help Feedback Privacy & Terms

LinkedIn LinkedIn Corp © 2016

STATE OF GEORGIA              )
                              )
COUNTY OF RICHMOND            )

## VERIFICATION

Personally appeared before me, an officer duly authorized to administer oaths in the State of Georgia, Edward W. Huff, who, after being duly sworn, states under oath that he is the duly authorized representative for Plaintiff HIREGURU, LLC as its member and that he has reviewed the foregoing Complaint and knows the facts stated to be true of his own knowledge and as to those matters he believes them to be true.

This __18th__ day of __April__, 2016.

_____
By: Edward W. Huff
Its: Member

Sworn to and subscribed before me this

__18th__ day of __April__, 2016.

_____
Notary Public
(Affix Seal)

7